Foundation, Incorporated, to submit for the appellate. Good morning, Your Honors. May it please the Court, I am Edward Kiyonka, and I represent the plaintiffs, the heirs of the decedent Clifford Phelps. This is an appeal from the dismissal of plaintiff's complaint for failure to state a claim. It consists of two counts. Count one is a claim for legal malpractice and breach of fiduciary duty. Count two is a claim for tortuous interference with inheritance expectancy. As to count one, there are two issues. The first is the defendants who undertook to provide legal services to Clifford Phelps in the drafting and execution of his first and only will. Also a duty to plaintiffs, his heirs, not to draft and obtain execution of an invalid will disinheriting them. The second issue involves preclusion. The legal issue in count one is duty. The liability of an attorney to persons not his client. And that's analogous to the liability of an accountant to third persons for accounting negligence. The issue is privity. And you remember all the accounting cases we studied in law school and how the duty to persons with whom the accountant did not have a contract has gradually expanded. The law's concern was and is that the liability of accountants and lawyers not run to everyone in the world that might be harmed by their malpractice. That liability would be disproportionately large and probably uninsurable. In the case of accountants, remember that liability is expanded to include persons known to the accountant and who the accountant knew would rely on the accountant's representations, but still persons who did not have a contract with the accountant. In the case of lawyers, the Illinois Supreme Court has recently reaffirmed the rule as to the duty of lawyers to non-clients in the State of Powell 2014 case, which reaffirms the Pelham rule. All the cases state the rule as stated in Pelham. Quote, for a non-client to succeed in a negligence action against an attorney, he must prove that the primary purpose and intent of the attorney-client relationship itself was to benefit or influence the third party. The case, this case, is a case of first impression both on its unique facts and also on the law because there is no case that directly interprets the term influence, which is the second prong of the Pelham test. How is the land of Lincoln supposed to know about your clients? How far do you have to go in determining who may or may not be, quote, influenced? Well, that would go to the breach of duty issue, Your Honor. I understand. The complaint alleges that they knew or should have known that he was incompetent to make a will. There, of course, are many more facts than what are pleaded in the complaint. But my question is in the duty issue, assuming competency or not, I don't know how that's related, but how far do you go in saying there is a duty? Descendants? Cousins? Second cousins? No, we don't have to decide how far to go in this case. All you have to do is say, in this case where we had a class of beneficiaries, let us presume that in this situation, Mr. Phelps, he did not have a will. This was his first and only will. And he became incompetent according to the complaint before a will was drafted for him. So we have to presume that he intended for his property to go under the laws of intestate succession, which would mean it would go to his wife if she survived him. She did not. If not, it would go to his siblings. Those are the plaintiffs in this case. That's a known class of persons. Those are people who any estate planner would know. So you're saying we should follow either the assuming a valid will, that would kind of be the guidelines that we should follow. Yes, that's the class. That's the class of people. In this case, the policy, the rationale of a privy rule is to prevent liability to unknown or remote third persons. And so we're not talking here about unknown or remote third persons. The plaintiffs here are the heirs who would have taken his estate and who were known to Stephanie Hebert. Her deposition or discovery deposition has been taken. It's not in the record in this case. But based on that, we have alleged in the complaint that she knew that he had siblings. And therefore she would have known as a competent attorney that if there was no will, his property would have descended to his siblings and their descendants. He had two living siblings, two deceased siblings with descendants. Those are the heirs that we represent in this case. So it's not an unknown or unlimited group. It's a limited group of persons who the attorney knew or should have known would inherit absent a valid will. Mr. Kanka, I know I'm interrupting. I'm sorry. I'm sorry. I apologize for all the interruptions, but I think we understand the facts of the case. I want to talk about what you want to talk about, Your Honor. The settlement. Was a general release filed and agreed to in that settlement? No. No, I don't believe there was a general release. So, but even considering that there was no release, how do you, how do you work the two? If you go into a settlement negotiation and you settle a case, then how do you turn around and file a malpractice lawsuit? Your Honor, we say this is directly analogous to the familiar tort cases where you have two tort feeders. And this happens all the time. You sue both of them. You settle with one. You go to trial against the other, and then you get a credit. Sure, but who's the one and two? I mean, the settlement was about the will. And the malpractice is about the will. So you have the same facts. Well, the same facts, but a different cause of action. The legal malpractice case is about damages, seeking damages on a tort theory. So it's really a separate remedy, if you will. But that brings you to res judicata. Well, we've addressed that in detail. I know. And there is no res judicata in this case because it's a separate, it's a different claim and different parties. For a res judicata, a claim conclusive reply, the parties have to be the same, and the claim has to be the same. It doesn't have to be exactly the same cause of action. It has to be the same claim. We detail in our brief how these are completely under the law. In the cases we've discussed, these are completely separate claims. One is a claim, one is seeking the inheritance under the laws of dissent and distribution. The other is a claim for, a tort claim for damages for professional negligence. So those are not the same claims. But the settlement, wasn't the settlement about the same raise, the same property, the same result? Well, technically, I think not, Your Honor. The one, the property is gone. You know, the property was, under the settlement, was divided between these heirs and between Elaine's nieces. This case is about damages. It's about harm that was sustained as a result of the professional negligence involved. So it's not the same raise. It's a completely different fund, if you will, in this case. It's a completely different fund of damages, but what was settled was the same issue under the will. Yes, but in a tort case, I know Your Honor is familiar with many tort cases of this type where you sue multiple defendants and you settle with some of them. That doesn't end your claim. That doesn't, even though it's the same, in that case, it's exactly the same fund, you still can take a credit for that and proceed to recover the rest of your damages, if you can, from the other defendants. That's all they're seeking in this case, is the damages that were caused by the creation of this invalid will. But for that will, they would have inherited the property. Instead, they had to file, they proceeded as they properly should to file a will contest. The will contest was settled. Now, I understand from reading the Missouri article that will contests are usually settled because it's an all or nothing situation and nobody wants to take a chance of, you know, going one way or the other. But as you, in the record, it shows that there was, you know, substantial evidence available. Many depositions were taken in the will contest. And so... But one of the issues decided in the will contest was that the testator had legal capacity. Well, it wasn't really decided because there was no decision. There was a settlement. That was the issue. I mean, the very first order entered on December 12, 2012, indicated that the testator had legal capacity. And that's, I guess, before the... That was in the probate. The contest. Yeah, that was in the probate. That was the first probate order. Right. But... So, how do you get around that? Why are you not a stop from relitigating that issue? Because under Missouri law, when a will contest is filed, the order admitting wills probate is set aside. And so, there is no longer an order which is based on intermination of those cases. Because it's a rather perfunctory hearing for the approval of a will, whereas in a will contest, you have an extended hearing on the issue of the competency. And so, Missouri law is very clear. We cited the Wilde case. It says that in that situation, the order admitting will to probate is set aside. May I ask a question about duty? The Powell case, a fairly recent Supreme Court case, summarizes the third-party benefit issue as, with this phrase, intent to directly benefit. So, my question is, how was the lawyer hired to directly benefit these intestate bears? Your Honor, that phrase appears in a lot of cases. You know, the intent to benefit. But that's only part of the test. Looking at the entire statement of the rule, it says, was to benefit or influence, or influence the third party. And so, in a couple of older cases, that phrase, influence, was added, and they cited it to a couple of law review articles. Are you familiar with where that word came from, or any context where that word, influence, has ever been applied? Well, it came from the Pelham case, as far as I recall. And that, in turn, was adopted again, two years ago, in the State of Powell, in that decision. And I think that that is the clear statement of the rule from the Illinois Supreme Court. It says, was to benefit or influence that third person. But, if you, the facts of this case are really sort of the flip side of the benefit, the intent was to detriment, was to harm, in a sense, was to cut out the plaintiffs in this case. If I could pose a hypothetical, as law professors sometimes do, suppose that while Clifford Phelps was still competent, they had negligently drafted a will leaving all his property to his nieces or to a charity or to anyone. And then it turned out that that will was invalid after he died. Clearly, those intended beneficiaries would have a cause of action under all of the case law. This is simply a variegation of that same fact situation. We, why should his intended beneficiaries have a cause of action in my hypothetical, but not the beneficiaries who would have taken by intestancy in this case? They stand in the same position as persons who were intended beneficiaries. It's simply that they were cut out or barred from becoming beneficiaries by that negligence. But, they're no more remote from the negligence, if you will, than the beneficiaries who would have taken under an invalid will. Well, that seems to be the opposite of a benefit if they're, if a lawyer is hired to disinherit them. Yes. Yes. And, of course, that's an argument that you should have a rule that creates a conflict of interest, that is, for the attorney in representing the state. But, in this case, there's no, under the facts which we have because at the time, if you will, the estate plan was created and executed, he was incompetent. And, the lawyer in this case simply relied on representations communicated through a staff member from his wife who said he wants his property to go to my nieces. We don't know what his real intent was. And, as I say, I think we have to presume that his intent was to die a testate because that was how he left it before he became incompetent. And so, they stand in the same position as a disappointed beneficiary under an invalid will. It's simply they are no more remote than the beneficiary under a will which turns out to be invalid. The rationale for the rule is to prevent liability to unknown or remote third persons because then where would it all end? But, plaintiffs here are not unknown or remote third persons. They're the heirs who should have taken under the estate. They're heirs who were known or should have been known to the drafter of the will. And, under the language and the rationale of the rule, the duty to them should be the same as the duty to a disappointed beneficiary under an invalid will. The preclusion issue I've discussed in detail in the brief. As I said a moment ago, there's no full faith and credit here because under Missouri law, which is similar to Illinois law, filing a will contest automatically vacates the order of remitting the will for probing. There's no plain conclusion because the cases and the issues are different. The parties are different. I just want to make sure I understand your argument. You're saying that no court has determined in any proceeding whether or not this gentleman was competent at the time he executed this will. That's correct. Well, I mean, there was a perfunctory determination at the approval of the will. But you're saying Missouri law would... But I'm saying that that's set aside in favor of the will contest. The will contest would have been the ultimate determination of that. But that order was not entered setting aside that, or was it? There's no order entered that I'm aware of setting aside the probate, but under the Illinois law case, it's automatic, as I understand it, under Missouri law. Automatically that order is set aside, and the issue of competency is then opened. Just the mere filing of a will contest does that? Yes. And it's reopened to be determined in the will contest. And again, there can be no issue preclusion because there was no determination in that case as to the competency issue. So that's the issue that has to be determined in this case. When this case was actually tried, that's the issue that, that's the place where the issue of competency will ultimately be determined because that's the key issue in this case. And what was the basis for the dismissal? Was it a 2-615 or a 619? It's not clear, Your Honor. As I said at the beginning of the brief, the motion appears to be made under both sections, and the, you know, under one, just 2-615, you only look at the complaint. Under 2-619, you can look at additional matter. But there were certain documents, as I mentioned, there were five documents that were filed by the defendants in support of their motions. The court took judicial notice of those documents, and we think that was proper, and we included some of them in the appendix to our brief. So the motion, in effect, is sort of a hybrid between those two, in which we are looking at the allegations of the complaint plus any information available in those documents. But the facts are essentially undisputed. Well, we can talk about it on rebuttal, I guess. But the motion to dismiss, I don't see it in the appendix. Do you know if it was included? Anybody? I mean, I didn't see it. Okay. Thank you, Mr. Chairman. Thank you, counsel. Argument for the appellee. Good morning, Your Honors, counsel, and may it please the court. My name is Sean Cronin. I represent Appellee Land O'Lincoln Legal Assistance Foundation. As I'm sure you're aware, it is a nonprofit entity that provides free legal services to the indigent and the elderly in 65 counties in Central and Southern Illinois. We urge you today to uphold the order of the Circuit Court, specifically Judge Randall Kelley's dismissal of Plaintiff's case in its entirety, on all bases set forth in the motion to dismiss. I'm sorry. Mr. Cronin, I'm not sure that we can do that. I'm not sure that it's sufficient practice for a lawyer just to file a shotgun kind of motion that says it's a 2615 and a 2619. At least according to the rules that I'm aware of, a motion such as you're describing has to be in parts and has to describe the basis for your 615 and the basis for your 619. So, at least from my perspective, it's very difficult for me to know in this order what was the basis for Judge Kelley's dismissal. I can't tell. And if you can tell me, I'm ready to listen to that. But I think 615 and 619 are a problem with lawyers that come before us and come before trial courts. So, if you would, please, I would like you to address that. Absolutely. Your Honor, that motion to dismiss was based on both 615 and 619. And it was filed jointly under, I believe, 6191, which allows you to file a 615 motion and a 619 motion in one document. But were the allegations separated out as to why this is a 615 and this is a 619? Well, the sections were certainly set out, like, in terms of separating a failure to state a claim for the malpractice action was set forth separately, and that would be a 615. The raging Dakota arguments were set forth separately, and that would be a 619. The collateral stopping were set forth separately, and that would also be a 619. So I would say, yes, Your Honor, they were separated and argued separately in the trial court. I'd also like to point out that this was extensively argued in the trial court, and there was a transcript prepared. We don't have that in the record because the appellant did not attach it to the record or include it, and that is their duty to do so and their responsibility. So the court would be more informed about what happened in the oral argument if they had done so, and it wasn't our responsibility to add that to the record. But we have one paragraph dismissing this complaint in its entirety on all the bases set forth in the motion to dismiss. I don't know how we deal with that, sir. Well, I would suggest that that's the order of the court, and it refers directly to the motion to dismiss, which was extensively briefed by both parties. The basis for dismissal is set forth in detail, thoroughly, in the motion to dismiss, which the order refers to. The fact that it's so broad, I think, is an indication of the strength of each and all of those arguments. I would like you to address the issue of duty, and particularly the appellant's argument that if an incompetent person goes to a lawyer and hires that lawyer or attempts to, that the intestate heirs are intended beneficiaries or somehow would be third-party beneficiaries based upon the appellant's theory. Sure, absolutely. The general rule in Illinois, and I don't think there's any dispute about this, is that a lawyer cannot be liable in malpractice to anyone except for their client. That is the general rule. There's no dispute here that the Phelps heirs were not Land O'Lincoln's clients. So that brings us to a narrow exception known as the Pelham Rule. The Pelham Rule establishes the third-party beneficiary rule, and as the Justice has asked questions about already, it's very clear that rule is, with a narrow exception, a third-party beneficiary can't have standing to bring a claim against a lawyer if they were the intended beneficiary of the attorney-client relationship. How can you know intent if there's an issue about competence? Well, Your Honor, that actually skips over to the full faith and accredited issues and the rate judicata issues because that issue was adjudicated by the Missouri court. I suggest to you it wasn't just adjudicated by the will contest court. It was specifically adjudicated by the probate court when they admitted the will to probate after briefing on the issue by the Phelps heirs and after an evidentiary hearing. Subsequent to that, there was the will contest, which was a full adjudication of that issue after 14 depositions, two years of litigation, and a voluntary settlement. In the interim, they also filed an Illinois probate matter. They wanted to skip across the river like they've done here. The Illinois probate court properly said no. Missouri properly has jurisdiction. We'll exercise ancillary jurisdiction, but we defer to them. And the Missouri court, in two different judgments, said this is the will of Clifford Phelps. He has testamentary capacity. That's been decided. Anything that goes forward in this court with regard to their malpractice claims necessarily would involve a finding that he was not competent and that the will was not valid, and that would be inconsistent with the Missouri court decisions and potentially nullify them, which would violate the probate acts of Illinois and Missouri and public policy in both states. So the point is that there can be no duty to incidental, people that were incidentally detrimental, and that's the distinction. The rule is they have to be, there has to be an intent to benefit them, a specific intent to benefit. Here we have an incidental detriment, and that detriment makes their interest adversarial. And the courts in Illinois give us guidance about the third-party beneficiary rule that you can never exercise a third-party beneficiary rule to assign a duty when those interests would be adversarial, and they're necessarily adversarial here, because they were disinherited by a will that's been found to be valid, by a man that's been found to be competent. And so their interest, he intended to disinherit them, so their interests are adversarial to his, because his intent was to disinherit. We know he intended to disinherit them because, I missed that part. I'm sorry, Your Honor, because the will was found to be valid, it was found to be the will of Clifford Phelps, and he was found to be competent, and then the matter was settled, which was the final adjudication of all issues with regard to the will. And so his will, I mean, is what it is. It does, in fact, disinherit these people. It gave all of his property to his wife, unless she pre-deceased him. And then the property went to the two beneficiaries, who ultimately, you know, one of which was the executor, and these are the people that were supposed to inherit per will. There was a will contest, and then they settled 50-50 after two years of litigation, which resolved all issues with regard to the will. Because what you just argued there, regarding what the Missouri court found regarding competency of the deceased, is that in our record here? And where is that in our record? Yes, Your Honor, that is in the record. It was attached to our motion to dismiss. It was one of the documents that the circuit court took judicial notice of. So that was, I can tell you what the document is called. December 12, 2012, the court entered a finding of facts, conclusions of law, and judgment. In that document, they found that they had jurisdiction. The will was the last will of the deceased. Based on testimony and depositions, the executor had met their burden to prove as a matter of law that the testator had legal capacity, and the instrument was his will. The will contest was subsequently filed, and again, that was settled voluntarily. What about Mr. Kiyanka's argument that the filing of the will contest under Missouri law set aside the finding of competency? I respectfully disagree that it sets aside the issue of competency forever and leaves it completely unresolved. I wouldn't say forever, but what about preliminarily? You have a December 12, 2012, finding from the court of legal capacity, then you have the filing of the will contest and the settlement. So the question I have is what about Mr. Kiyanka's argument that the filing of the will contest set aside that December 12 order saying testator had legal capacity? I would say that the existence of the will contest gives somebody the ability to challenge that prior rule. When they file that, it's temporarily set aside to be further adjudicated by the court of legal capacity. So you agree, you then agree that the filing of the will contest preceding temporarily sets aside the order? But does not vacate it, Your Honor. Set aside and vacate. Educate me on that. Well, it temporarily sets it aside in the sense that another court now has jurisdiction to revisit that issue. That court did revisit the issue. And what's the difference between set aside and vacate? I didn't understand your point. Well, I guess, Your Honor, in the sense they get to relitigate the issue and the court has the power to reverse. The second court, the will contest court, has the power to reverse and they did not do so. But you do agree that the filing of a will contest in Missouri then temporarily sets aside the preliminary finding that was made on December 12th as far as legal capacity and that that issue gets revisited under Missouri law? Yes, Your Honor, it gets revisited in the will contest. Then there was a settlement without any further finding of legal capacity in the settlement documents, correct? Yes, Your Honor. Okay, so then you fast forward to the filing of the legal malpractice suit on June 6, 2013. So we go into that malpractice suit, from what I'm hearing now, with no finding as to legal capacity. Is that true, too? No, Your Honor, I respectfully disagree. Okay, educate me. Yes, sure. Both Illinois and Missouri law, which are both relevant here because we're All issues that were or could have been adjudicated in a probate matter like the will contest, those issues are resolved by a settlement, specifically a settlement that is memorialized as a judgment, as this was here. Those issues, specifically that issue, whether or not the will is valid, and one of the issues that you use to determine if it's valid is whether or not you have testamentary capacity, that has been decided and finally adjudicated, regardless, frankly, of whether or not that in the initial ruling of 2012, when the will was admitted to probate of testamentary capacity, whether or not that was set aside or resolved officially in the settlement document, it does not matter, because that document is a final adjudication with regards to those issues, and they cannot be relitigated. And the law in Illinois and Missouri are both quite clear on that point, and it's extensively briefed in our brief. I'm just trying to figure out in the settlement, do we have the settlement document? I'm not sure that I set it up. Your Honor, I do not believe that the settlement document itself is in the record. Yeah, I didn't think I saw that. So the settlement is between the family and a third party that's not related by blood, right? Yeah, the two beneficiaries under Clifford Phelps' will happen to be the nieces of his late wife of 56 years. So, I mean, I just, no, I suppose they're not related by blood, but they were his wife of 56 years' nieces, very close families, I understand. Not related by blood. Yes. So the rules of intestacy don't apply. So this was strictly a settlement. So you're saying that because there was a settlement of some kind that we should automatically assume that the issue of legal capacity was decided under Missouri law? As a matter of law, that issue has been finally adjudicated. And was that one of the bases argued for dismissal under 615? Absolutely, Your Honor, extensively. Now, you see, that's the problem I have. So do we review this order de novo or manifest way to the evidence? Judge, I would agree that because it's a dismissal, you can review it de novo. On all issues? Yes, ma'am. So we don't get into the factual bases? We don't need to, is your argument? No, and I believe that as a matter of law, the court's order was accurate and should be upheld. And yet I'm missing a piece. I'm missing the settlement document. Because I don't know what that said. Your Honor, the settlement document was attached as an exhibit to the judgment in order approving the settlement. All the court's findings and facts and conclusions are in that judgment. And they refer to the settlement, which as I understand it, just sets forth the monetary split. But that's also in the judgment, which says it's a 50-50 split. The court goes on to say it would be difficult to be more fair and reasonable. Each party stood to gain 100% of the value of the estate. They split it 50-50. They voluntarily did that. They did not have to do that. If they would have proceeded to trial, they stood to inherit 100% of the estate if they were successful. And there would be no damages to seek here today. As counsel has acknowledged, and they acknowledged in their brief, they acknowledged there would be a set-off in this case, even if they proceeded, of the amount of money that they received under the estate. That necessarily means, had they received all of it, that there would be no damages in this case. And as the court, I think, has suggested, that's why the cases are exactly the same in terms of damages. It is about seeking the half of the estate that they voluntarily chose not to have by choosing not to have a trial in the Missouri court, which was the proper forum to make these adjudications. And, again, the law in Illinois and Missouri is very on point with regard to that. Now, that's still an adjudicata issue. But if you jump back to attorney-client and duty, those are the first two elements of a malpractice claim. There is no attorney-client relationship, period. You go to the third-party rule. That involves a duty as well. Again, there simply can be no duty to these people because they weren't the intended beneficiaries. As I think counsel has acknowledged, they were the opposite of beneficiaries. And so the interests conflict. Land O'Lagan couldn't possibly have had a legal duty to them and a duty to Mr. Fels, the way his will was written. Assuming he was competent. Well, again, Your Honor, that issue has been adjudicated. No, let's just talk a legal argument. Okay. So Mr. Kiyanka argues the intestate rule. So when you say there was no duty to these folks, you're assuming that Mr. Fels was competent and intended to disinherit them. I do say that, Your Honor. But I also say that it would be their burden to prove the third-party beneficiary rule, and it's a heavy burden. It's a very narrow exception. They would have to prove that the intended benefit, the intent, the attorney-client relationship by Mr. Fels and known by Land O'Lagan was to benefit these third parties, and that's why there's a duty. Land O'Lagan denies that. I understand. But they only get to try to prove that if they go forward. If they're dismissed, there is no opportunity to prove anything. Right? Correct, Your Honor. But they did have that opportunity, and that, again, goes back to Reggie Ducati. They had a full and fair opportunity. This was not a flashy litigation. In this Missouri proceeding? Yes, Your Honor. It was litigated for years, 14 depositions. This was not a small litigation. They had an opportunity to prove and discover all of those things, and that was the proper form to do so. And that was the Missouri proceeding? Yes, Your Honor. Okay. They said, let's take half of this money and let's jump across the river and take what I would call their fourth bite at the apple. What was the third? They also filed the Illinois probate action. Oh, that's right. And the Illinois probate court properly said, no, Missouri has jurisdiction. We have no jurisdiction over whether or not this will is valid or whether or not it's competent. So we have another Illinois court that has already agreed with my position in terms of the jurisdiction of the Missouri court to make that decision. I'd also like to point out that whether there's attorney-client relationship or whether there's a duty, those are also intertwined with standing. There are three separate issues, but this case is barred for all three of those reasons. There's no attorney-client relationship. There can be no duty. The exception that Mr. Kato suggests would be an exception to an exception that would swallow the rule and the exception. I can't think of where the line ends when you expand an attorney-client duty to non-clients in this way. Make no mistake about it. It's very clear in his briefs. They are arguing for a change in Illinois law. If you read his brief carefully, he doesn't dispute very much that that is the law. And there's a large section in his brief where he cites other jurisdictions and the direction in which the law is headed in terms of change. This would be a massive change. I don't even know what it would do. He mentions the ability to ensure risk when he talked about accountants. I do not know how lawyers or organizations like Randall Lincoln could ensure risk like this if their duty applied to an unlimited number of unknown third parties, six cousins that live in Europe that could be beneficiaries. It's simply not the law, and it would wreak havoc on the malpractice system and its public policy. I'll touch briefly on issue preclusion, but that was already encapsulated really in the issue of re judicata. This issue, again, has already been adjudicated. All issues with regard to competency and the validity of the will haven't necessarily needed to be adjudicated by the Missouri court, and they were in two different judgment orders. And I've been told not to use all of your time, and so I will not if it's not necessary. If there's no more questions. Thank you, counsel. Rebuttal, Mr. Kiyanka. First, I'd like to talk about this argument as to whether his capacity was determined. The defendant's argument here is inherently inconsistent. He says that there was a determination when the will was proved out that he had legal capacity, but if there were two, there could never be a will contest. That was the final determination. Well, along that line, let me ask you this question. If he's not competent, which is the premise of your client's position, how can he be intending to benefit a third party by hiring this lawyer? Yes. So how can that legal relationship be established by an incompetent? That's where I was going next, Your Honor. That's the unique thing about this case. And he says this would open the Pandora's box. No, it wouldn't, because this case is unique on its backs, and this court's decision would be narrow. It would be only with respect to this kind of special situation. Could there ever be, they say that, you know, they talk about in the record there is a copy of the contract. Well, if our allegations are true and they must be taken as true, how could there be a lawyer-client relationship with Clifford Phelps when he is incompetent? And they talk about his intended beneficiaries, his wife's nieces being intended beneficiaries. But Justice Warren says how could they be intended beneficiaries if he was incompetent? He couldn't have a testamentary intent with respect to those beneficiaries. We're not seeking a change in Illinois law here. We're seeking to apply the accepted Illinois Supreme Court test, which includes the words to benefit or influence. Now, there's a rule of law that says that every word in a statute or in this case in a decision should be given effect. They would simply write out that phrase, influence. But the Supreme Court must have put that in there for a reason. It has to have some meaning. And this is a case where we can see that meaning applied. Actually, the intent in this case, of course, was not Clifford Phelps' intent. It was the intent of whoever drafted the will and perhaps the intent of Mrs. Phelps in saying that what he really wanted was her nieces to receive the property. But we don't know what his intent was. There was no contract. And so this is an ideal place to apply this rule, to say that these people who were not remote, they were not unknown third parties. They were the people who stood to inherit under the laws of intestacy and who were cut out as a result of the purported will drafted not according to his intent under our allegations, but according to someone else's intent. As to the motions, Your Honor raised the question about the motions. The motion was a very detailed motion. It was, in effect, a motion and a brief combined. And there is a record. The original was at C-47 in the record. And then they did an updated motion when we filed an amendment to a claim, and that's at C-119. And it's many pages long. We didn't think to put it in the appendix because it didn't seem necessary since the review here is simply whether the complaint, and it is done in overview, whether the complaint was properly dismissed or failure to state a claim. That's the simple issue in this case. That's what you're assuming is it was a 615 substantially insufficient as a matter of law. Why couldn't it have been a 6199? Well, as counsel said, it really was a combination motion. But I'm saying it doesn't make any difference because the essential facts, all the facts the court needs to decide this case are undisputed, and they're either in the complaint or they're in the additional documents that were attached to the motion to dismiss. And we're perfectly happy for the court to look at all of those documents as a part of this motion because the facts are not really in dispute. What's really the issue here is the simple legal duty issue. Well, there's a huge dispute on whether the issue should proceed under duty as a matter of intestacy or whether the issue of competency has already been decided. Yes, Your Honor. That's a big dispute. I would simply invite the court to read the Wilde case, which we've cited in our brief. It's a Missouri case which says that when a will contest is filed, the order admitting the will to probate is set aside. And there are other cases, but that's a good one for that purpose. And that means the issue is over. And the issue was not decided in the will contest. If it was, then, of course, we would be. The issue as to competency has never been judicially determined as a result of the Wilde case. All right, counsel. Thank you. I thank you both for your arguments. We'll take this case under advisement and issue a written report.